THE E. RICHARD MEINIG COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10698. Promulgated November 25, 1947.

*Robert J. Bird, Esq.*, and *Harry W. Lee, Esq.*, for the petitioner.
*Karl W. Windhorst, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency in income tax of $41,235.30 for 1941 and deficiencies in excess profits tax of $115,418.49 for 1941 and $37,346.60 for 1942. The petitioner claimed a deduction for 1939 of $615,143.40 representing the partial worthlessness of a debt in the amount of $640,774.38 due it from the Meinig Hosiery Co., hereafter called Hosiery. The Commissioner, in computing the net operating loss carry-over from prior years to 1941, disallowed $385,195.02 of the deduction claimed for 1939, "for the reason that it is held that the debt became worthless prior to the year 1939." The only issue for decision relates to the deductibility of the debt referred to above. All of the facts material to a proper decision of that question have been stipulated and the stipulation is adopted as the findings of fact.

The petitioner is a Pennsylvania corporation which filed its returns for the periods here in question with the collector of internal revenue for the first district of Pennsylvania.

The petitioner and Hosiery are closely related through stockholdings. Hosiery has been engaged since 1924 in the manufacture and sale of women's full fashioned hosiery. The petitioner loaned money to Hosiery and it also had a number of accounts with Hosiery from January 1, 1925, to March 4, 1938. There were a number of different accounts for convenience, but when any account was closed, any debit or credit balance therein was transferred to the "regular account." Debits and credits were made in the accounts representing a variety of transactions between the petitioner and Hosiery. The debits included cash advances, sales of merchandise to Hosiery, charges for labor and material, charges for expenses paid by the petitioner on behalf of Hosiery, charges for interest, and other charges. The credits in the accounts included cash payments and sales of merchandise to the petitioner, credits for expenses paid by Hosiery, credits for yarn purchased for the petitioner by Hosiery, and a number of others. The stipulation shows the net debit balance which existed in the account at various dates.

The net debit balance in the accounts as of September 22, 1931, was $385,195.02. The accounts went on without interruption through that date, and on March 4, 1938, the net debit balance in the accounts was $640,774.38. Hosiery was sustaining losses during all that period. It was indebted to a Reading bank in the amount of $150,000 on September 22, 1931. The petitioner at that time owned all of the common stock of Hosiery and, in order to maintain the operations of Hosiery, the petitioner adopted a resolution on that day "that the Reading National Bank & Trust Co. shall have priority over any claim that this company has against the Meinig Hosiery Co."

The financial difficulties of Hosiery continued and a petition for reorganization under section 77-B of the Bankruptcy Act was filed on March 4, 1938. It was approved and allowed on the same date and trustees were appointed to operate the business of the debtor. The petitioner filed a claim in that proceeding showing the debt in the amount of $640,774.38 owed it by Hosiery. The indebtedness of Hosiery to the bank at that time amounted to $153,989.93. The debtor was found to be insolvent on September 28, 1938, and liquidation was ordered on October 17, 1938, in the absence of any plan of reorganization.

The petitioner estimated during 1939 that its recovery on its indebtedness due from Hosiery would not exceed $25,630.98 and it wrote off the remainder of its debt in the amount of $615,143.40. The write-off was claimed as a deduction on the petitioner's return for

1939 as a partially worthless debt. The Commissioner disallowed $385,195.02 of the deduction claimed and allowed the remainder.

The petitioner learned from the receivers in 1940 that it would receive $12,548.43 in final distribution of the assets of Hosiery. It thereupon wrote off its books $13,082.55, representing the difference between $25,630.98, the amount of the indebtedness which was not written off in 1939, and the amount it was to receive in distribution. The amount of $13,082.55 was claimed by the petitioner as a partially worthless debt deduction on its return for 1940 and was allowed by the Commissioner.

The trustees for the bankrupt estate determined that $30,126.30 of the amount available for distribution could be applied to the claim of the petitioner, but paid $17,577.87 thereof to the receiver of the Reading National Bank & Trust Co., in accordance with the subordination agreement referred to above. The balance, amounting to $12,548.43, was paid to the petitioner in February 1941.

The respondent argues that the amount of the indebtedness at the date of the subordination resolution was a separate debt which became worthless in 1931 or in 1938 and deduction for that worthless debt could not be postponed until 1939 or to any year after the year in which it became worthless. His whole argument is based upon the premise that there was not one debt, but two, due from Hosiery to the petitioner. He argues that there was, in effect at least, an "account stated" in 1931 as a result of the subordination resolution. The cases which he cites in regard to an "account stated" are not in point because they are cases in which the debtor and creditor have agreed as to the amount due on a certain date. Here there was no agreement or action of any kind on the part of the debtor. Furthermore, the accounts continued to be active with debits and credits without the slightest interruption through and without any particular recognition of the date of September 22, 1931. There was no totaling of any of the accounts on that date. The net indebtedness on that date was ascertainable from a consideration of each of the separate accounts then in existence, but it was not set forth in a lump sum at any place on the accounts. The petitioner had but one cause of action against the debtor on March 4, 1938, and that was for the entire amount due it. It did not have one cause of action for the amount which happened to be due it on September 22, 1931, and another cause of action for the amount by which the debit balance in the account increased after that date. *Buck* v. *Wilson*, 113 Pa. 423; 6 Atl. 97. There is no justification for dividing the debt into two debts. Cf. *Eljer Co.* v. *Commissioner*, 134 Fed. (2d) 251.

The stipulated facts show that the indebtedness never became entirely worthless up to and including 1939. The Commissioner

recognized that fact by allowing a substantial amount of the total charged off in 1939 to be deducted as a partially worthless debt. He does not seek to rescind this action in this proceeding, but continues to recognize it as proper. This situation raises a question of law, Must a taxpayer deduct for partial worthlessness in each year when some partial worthlessness develops, or may he ignore partial worthlessness that occurs in one year, wait until further worthlessness occurs, and deduct the total partial worthlessness at the later date? The taxpayer can wait until the later date and deduct the entire partial worthlessness at that time, even though a part of it may have occurred in a prior year. Cf. *Moock Electric Supply Co.*, 41 B. T. A. 1209; *Leslie H. Reed,* 45 B. T. A. 1130; affd., 129 Fed. (2d) 908; *Atlantic Coast Line Railroad Co.*, 4 T. C. 140. In other words, where the Commissioner recognizes that some partial worthlessness occurred in 1939 by allowing a part of the deduction claimed, he can not disallow the remainder upon the theory that, for example, 75 per cent of the debt became worthless in a prior year and only 20 per cent became worthless in 1939. The parties are not in dispute as to a number of other matters.

Reviewed by the Court.

*Decision will be entered under Rule 50.*