Feltex Corporation v. Commissioner.
Feltex Corp. v. Commissioner
Docket No. 37120.
United States Tax Court
1953 Tax Ct. Memo LEXIS 303; 12 T.C.M. (CCH) 382; T.C.M. (RIA) 53119; April 9, 1953
*303 The taxpayer has proved that in the taxable year Willi Gunzburger was indebted to it in the sum of $18,161.16; that in the taxable year 1943, it compromised such indebtedness for $797.78 because that was all that it could get, and agreed to cancel the balance, and that this sum represented all that it could collect on the indebtedness because the debtor was unemployed and had no other assets. Petitioner charged off the balance of its indebtedness against Gunzburger, $17,363.38, and took a deduction for it as a bad debt which became worthless in the taxable year. The Commissioner disallowed the deduction and determined a deficiency. Held, the Commissioner erred and the petitioner is entitled to the deduction under Section 23 (k) (1) of the Code. George Heftler, Esq., for the petitioner. Robert McDonough, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The Comm9ssioner has determined a deficiency in petitioner's income tax for the year 1943 of $4,400.91 and a deficiency in petitioner's excess profits tax of $176.73. The deficiency is due to the disallowance of a bad debt deduction of $17,363.38. The explanation which the Commissioner *304 made in his deficiency notice for the disallowance was as follows: "It is held that you are not entitled to a deduction as a bad debt in 1943 in any amount because: "(1) You have not proved the existence of a debt owed to you; "(2) You have not proved the amount of any indebtedness; and "(3) You have not proved that any debt which might have been owed you became worthless in 1943." Petitioner by an appropriate assignment of error contests the foregoing determination by the Commissioner. Findings of Fact Part of the facts were stipulated and are found as stipulated and made a part hereof by this reference. The petitioner is a corporation organized under the laws of the State of New York with its offices in New York City. Petitioner filed its returns for 1943 with the collector for the third district of New York. Between December 20, 1928 and the early part of 1933, Willi Gunzburger was the president of petitioner. On December 20, 1928, he subscribed for 245 shares of the capital stock of petitioner (out of a total of 1,000 shares issued) at $100 per share and paid the subscription price as follows: On December 20, 1928, by transfer of
merchandise
$12,500
On November 1, 1929, cash
7,000
On December 17, 1929, cash
5,000
$24,500
*305 On November 12, 1929, Gunzburger sold 20 shares to Walter Buhler, and in the early part of 1933 when he severed all relations with petitioner, he disposed of his remaining shares by transferring them without consideration to Edward Nufer, the majority stockholder of Feltex Corporation. Beginning with a payment on December 28, 1928, in the amount of $7,500, the petitioner made advances to and for Gunzburger. By December 31, 1931, these advances and interest thereon amounted to $11,658.32. On December 31, 1931, Gunzburger, acknowledging such debt, executed a promissory note therefor payable to the petitioner in the amount of $11,658.32, which promissory note was renewed from time to time. The last note executed by him, payable to the petitioner, was dated November 8, 1941, in the amount of $11,658.32. In addition to the note of $11,658.32, Gunzburger became indebted to the petitioner for advances made for his account of $1,191.38, making his total indebtedness to petitioner, $12,849.70. Petitioner accrued interest in the amount of $5,311.46, during the period January 2, 1932 to December 31, 1937, and included it in its income set forth in its income tax returns for each of the years *306 from January 1, 1929 through December 31, 1937. The income tax returns of petitioner for the years 1929 through 1942 showed net income and losses as follows: Year
Income
Loss
1929
$14,713.19
1930
$105,395.30
1931
2,625.43
1932
88,538.75
1933
101,158.21
1934
60,780.15
1935
31,052.60
1936
24,091.42
1937
3,454.08
1938
803.55
1939
9,816.33
1940
$ 835.29
1941
$ 2,726.12
1942
22,638.46
After leaving the employ of petitioner, Gunzburger engaged in various enterprises, including the importation of Pilzener beer, the importation of felt bodies, the importation of rhinestones, and he became, as late as 1942, the moving spirit and president of Metaplast Corporation which had developed a new process of metal lamination. In 1942, Gunzburger appeared to be in full charge of the operation of the business of Metaplast Corporation, which had a plant in New York. In 1933, Gunzburger was approximately 45 years of age. He always expressed himself as hopeful that he would make a substantial amount of money out of his various enterprises. From time to time he promised petitioner that he would repay all that he owed. On November 9, 1943, Gunzburger *307 wrote a letter to the president of petitioner in which he stated that when he promised to repay his indebtedness he was under the impression and had hopes of getting a substantial sum from the Metaplast Corporation but that he had been "frozen out" of that corporation just when the time came when he thought he would get a substantial sum from it. He offered to settle his debt by the payment of $250 in cash. This letter from Gunzburger to petitioner's president was as follows: "340 West 86th Street, New York, November 9th, 1943. "Mr. Edward Nufer, Feltex Corporation, 38 West 39th Street, New York City. "My dear Mr. Nufer: "In answer to your several requests that I repay you the money you loaned me, please be informed that I am in no position at present to repay same or state just when I can repay it. You know that I am without funds at present and that I am trying very hard to engage in some business from which I can support my family and myself. "I have many other obligations to repay which come before yours and I am not able to take care of these either. "When I promised to repay you, I was under the impression and had hopes of getting a substantial sum from the Metaplast. *308 But after struggling for Metaplast and when the time came when I thought I could get a substantial sum from it, I was frozen out and realized next to nothing. "However, to show my good faith, I have been trying to arrange with some friends to advance me $250.00 so that I could offer same to you in full settlement of your claim against me. If this is agreeable to you, I have the promise that the $250 will be produced around December 15th, 1943, but only on condition that you will release me from further obligations. "Please let me hear from you. "With many thanks for your past favors, I am, "Very truly yours, [signed] Willi Gunzburger" In December 1943, petitioner entered into an agreement with Gunzburger to accept $250 in cash, plus a cancellation by Gunzburger of the debt of petitioner to him of $547.78, in full settlement of petitioner's claim of $18,161.16. This settlement was consummated in December 1943, petitioner receiving $250 in cash from Gunzburger and a cancellation of the debt of $547.78 and executing and delivering to Gunzburger a general release of all claims. Petitioner wrote off the balance of the debt of $17,363.38 as uncollectible on its books and in its *309 income tax return for the year 1943. Willi Gunzburger died on July 1, 1952. Opinion BLACK, Judge: The controversy which we have here involves the disallowance by the Commissioner of a bad debt deduction of $17,363.38 taken by the petitioner in its income tax return for the calendar year 1943. In that year the petitioner accepted from the debtor the sum of $250 and the cancellation of an obligation by the petitioner to the debtor in the sum of $547.78, a total consideration of $797.78, in return for the cancellation by the petitioner of the debt of the debtor to the petitioner amounting in all to the sum of $18,161.16, leaving a balance of $17,363.38 from the obligation of which petitioner released the debtor. Petitioner deducted this balance from its income on its income tax return for the year 1943. The Commissioner disallowed the deduction and as a result determined a deficiency in income taxes of $4,400.91 and in excess profits taxes of $176.72. The question is: Did this balance of the debt ($17,363.38) become worthless in 1943, and was the petitioner justified in taking it as a bad debt deduction pursuant to section 23 (k) (1) of the Internal Revenue Code *310 . Both parties agree that section 23 (k) (1) of the Code is the applicable statute. Section 23 (k) (1) provides that in computing net income there shall be allowed as deductions: "(k) Bad Debts. - "(1) General Rule. - Debts which become worthless within the taxable year; * * * and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * *" Regulations 111, section 29.23 (k)-1 states: "Where the surrounding circumstances indicate that a debt is worthless and uncollectible * * * a showing of these facts will be sufficient evidence of the worthlessness of the debt for the purpose of deduction. * * *" Since the Revenue Act of 1942, deduction for debts which are worthless must be taken in the year the debts become worthless, although deduction for partially worthless debts may, at the option of the taxpayer, be taken in a year subsequent to that in which the partial worthlessness occurred, but no later than the year in which the debt becomes wholly worthless. The Commissioner in his disallowance of petitioner's claimed bad debt deduction explained *311 his reasons for the disallowance, as follows: "It is held that you are not entitled to a deduction as a bad debt in 1943 in any amount because: "(1) You have not proved the existence of a debt owed to you; "(2) You have not proved the amount of any indebtedness; and "(3) You have not proved that any debt which might have been owed you became worthless in 1943." We think the facts which have been stipulated, together with the oral testimony, establish all three factors in petitioner's favor. We think it is indisputable that the stipulated facts clearly establish (1) and (2) above, and we think the stipulated facts, together with the oral testimony, also establish (3) above. Respondent's brief is devoted largely to a contention that petitioner has not proved that the debt had any value at the beginning of the taxable year 1943, and, therefore, it could not have become worthless in 1943; that it had become worthless in some year prior to 1943, perhaps as early as 1938 when petitioner ceased to accrue on its books any interest against Gunzburger. The facts undoubtedly establish, in our opinion, that for several years prior to 1943, petitioner's chances for recovering all *312 of its debt against Gunzburger were poor, but these facts also establish to our satisfaction that the debt had not become entirely worthless in any of these prior years. A taxpayer is under no obligation to take a deduction for partial worthlessness and is justified in continuing an account on its books so long as there is a possibility of any recovery. In E. Richard Meinig Co., 9 T.C. 976, we said: "* * * Must a taxpayer deduct for partial worthlessness in each year when some partial worthlessness develops, or may he ignore partial worthlessness that occurs in one year, wait until further worthlessness occurs, and deduct the total partial worthlessness at the later date? The taxpayer can wait until the later date and deduct the entire partial worthlessness at that time, even though a part of it may have occurred in a prior year. Cf. Moock Electric Supply Co., 41 B.T.A. 1209; Leslie H. Reed, 45 B.T.A. 1130; affd. 129 Fed. (2d) 908; Atlantic Coast Line Railroad Co., 4 T.C. 140. * * *" As we have already stated, respondent strongly argues in his brief that petitioner's debt against Gunzburger was entirely worthless *313 at the beginning of the year 1943. Of course, if that were true, the debt could not have become worthless in 1943. But we think the stipulated facts conclusively show that it was not worthless at the beginning of 1943. These facts show that Gunzburger in the year 1943 compromised his indebtedness to petitioner by paying $250 in cash and releasing an indebtedness which petitioner owed to him of $547.73. Thereupon petitioner canceled the balance of the debt which Gunzburger owed. It is true, of course, that $250 in cash was a small amount in comparison to the entire amount of the debt but it was not such a trivial sum as can be disregarded and looked upon as no compromise payment at all. We have no reason to question the bona fides of this payment which Gunzburger made to petitioner in 1943, or that he made the payment out of his own funds which he secured from friends. The facts as to the compromise agreement between petitioner and Gunzburger have been stipulated and we have no cause to infer that the compromise agreement was not bona fide. The difference between the face value of an indebtedness and the amount received in compromise is an allowable deduction provided the debtor has *314 no assets out of which the entire amount may be collected. See O.D. 297, (1919) 1 C.B. 126, which reads as follows: "The difference between the face value of a note and the amount received in compromise is an allowable deduction, provided the debtor has no assets out of which the entire amount may be collected by suit. However, where the debt is compromised and the debtor has assets out of which the entire debt could have been collected through legal action the difference between the amount received in compromise and the amount claimed, whether admitted or disputed, can not be allowed as a bad debt." In December 1943, petitioner entered into and consummated an agreement with Gunzburger to accept $250 in cash, plus a cancellation by Gunzburger of the debt of petitioner to him of $547.78 in full settlement of petitioner's claim of $18,161.16. We think petitioner has sufficiently proved that at the time of this agreement in 1943, Gunzburger had no further assets out of which the balance of the debt could have been collected and the remaining portion of the debt became worthless. Petitioner was justified in charging off the remaining portion, $17,363.38, as a debt which *315 became worthless in 1943. We sustain petitioner, and inasmuch as the entire deficiencies are due to this adjustment, Decision will be entered for the petitioner.